DISTRICT COURT.            MAY 17, 1859.

ADMIRALTY.

## THE UNITED STATES *v.* LINDSAY AND CUNNINGHAM.

1. A seaman questioned the propriety of an order of the mate, but offered no resistance to its execution, whereupon the mate struck him a blow on the temple with a belaying-pin. *Held,* that under the act of Congress of 3d March, 1835, malice might be inferred from such a blow.

2. Ordinary work about a vessel, although severe, is not in the nature of cruel and unusual punishment when ordered by a master to be performed by the seaman who had recently received the blow, even though such work may have a tendency to aggravate the wound, unless the intention of punishment be apparent.

## CADWALADER J., CHARGED THE JURY.

The indictment is for two distinct offences. One charge is, that the defendants maliciously, and without any justifi-

able cause, beat James McGlathery, one of the crew—the other that they inflicted cruel and unusual punishment upon James McGlathery. The infliction of cruel and unusual punishment as a distinct offence, is charged against the defendant, Lindsay, alone.

As to the charge of beating, the case lies within the narrowest possible compass. McGlathery disobeyed an order given to him by the defendant, Cunningham. Bishop's evidence, and indeed McGlathery's own evidence, prove this very distinctly. It appears that instead of obeying the order, he twice undertook to judge for himself, whether there had been any occasion for such an order; and there is evidence that previous acts of slight insubordination of a somewhat similar character had occurred on his part. The disobedience which occurred when the blow in question was struck, was not the less a breach of discipline, because the order given may have been unnecessary. The case would have justified an immediate act of suitable chastisement of such a kind as might have brought this insubordinate young man, McGlathery, to a sense of duty. But, the defendant took a belaying pin, which was at hand, and struck McGlathery on the temple, a blow with it which knocked him down, and left him for a short time—one of the witnesses says a minute—insensible. It was not a blow which, if struck upon another part of his person, would have been dangerous. But, struck with such an instrument, on the head, it was a dangerous blow.

Had this blow been struck on a part of McGlathery's body, where it would not have been dangerous, or, had it been struck upon the head at a crisis of impending revolt or mutiny, or, under such circumstances of resistance of authority by McGlathery, or of insubordination of the ship's company, as might have justified an apprehension that revolt or mutiny would be the result of hesitation or forbearance on the part of the defendant, I should recommend you to find him not guilty. At a crisis of danger arising from any such cause, the master and officers of a vessel have a discretion,

with the exercise of which it would be unsafe to interfere. The security of lives and property on board of a vessel depends upon what may be done at such a crisis by the officers; and, if they act honestly, their conduct ought not to be closely scrutinized.

But in the absence of any such danger, a mere act of insubordination by a single seaman, without an actual resistance of authority, does not excuse the infliction of a blow on the head with an instrument like that used on this occasion. The act of Congress upon which the indictment is framed, requires that, in order to sustain the prosecution, the blow should have been struck, not only without a justifiable cause, but also from malice, hatred, or revenge. There is no sufficient proof of revenge, or hatred, and no sufficient evidence of *malice*, except the proof of the blow itself, struck, as it was, on the head, under the circumstances which have been mentioned. The words *hatred* and *revenge* used in the act of Congress require no technical definition, But *malice* is, to a certain extent, a legal term. A wilful act for which there has not been any legal justification or excuse, if injurious to the person of a fellow-creature, is within the legal definition of a *malicious* act. A mere *excess* of punishment in enforcing the discipline of a ship, unless under circumstances of extreme aggravation, does not suffice to show malice. Where, however, the question is not upon the *degree* of punishment, but upon its *character*, the *illegality* of its character may bring it within the legal definition of *malicious*.

This is the result of judicial decisions upon the construction of the act of Congress. I am of opinion, that in the absence of any resistance, or apparently intended resistance, of the authority of an officer of the vessel, a blow struck by him, with a handspike, upon the head of an insubordinate seaman, is an act *absolutely* illegal, and therefore, in law, *malicious*.

As regards the defendant, Lindsay, who was master of the vessel, there is no evidence to warrant a verdict of guilty. He is not in any manner shown to have been privy to the

striking of the illegal blow by the mate.   Whatever may have occurred under this head was done by the mate alone, without, so far as appears, the participation, or even the knowledge, of Captain Lindsay.

The other charge of *cruel* and *unusual* punishment is not sustained by the proof.   The specification of the charge is that when McGlathery had recovered from his hurt, and reported himself ready for duty, he was ordered by Captain Lindsay into the hold to break and pick the coal, which was in lumps, and had been mixed with the sand ballast, and to fill, and perhaps do some other work at, the coal barrels. That this was not *unusual* work, appears from the evidence that others of the crew, including the second mate, had been occasionally at work in the hold, and some of them at similar work, for an equally long period.   The only grounds on which it has been attempted to sustain the prosecution on this point are, that there were mosquitoes in the hold, and that their sting, and the dust and heat of the hold, had a tendency to injure the wound in his head, which was not quite healed, and cause inflammation.   If this was the case, there is no evidence that the captain knew it, or had the slightest intention that any such effect should be produced.

If such an effect *was* produced, and the captain afterwards discovered it, the circumstance is not important, because you have clear proof that he never ordered McGlathery into the hold again.   He was not there for more than a part of a single watch, not more than two or three hours.   The question, whether this work in the hold caused inflammation of the wound, is, therefore, not very material.   Inflammation of it afterwards occurred.   But the testimony shows that on the evening of the same day on which he was at work in the hold, a man fell back upon him, rubbing against the wound, and, in part, opening it afresh, and that until after this had occurred, there was no appearance of renewed inflammation. There is no satisfactory evidence that this accident was not the cause of the inflammation.   But though it had been caused by the work in the hold, there is nothing to show

that it had been a probable result of such work, much less that such a result was intended by the captain.

On the first count you will find the defendant, Cunningham, guilty, and the defendant, Lindsay, not guilty, if you take the same view of the law and the evidence which has been taken by the Court. On the second count, you ought to find both the defendants not guilty.

The jury found a verdict accordingly, and a fine of $50 was imposed by the Court upon the defendant, Cunningham.